Commonwealth vs. Steven D. Correia.

Bristol. October 17, 1983. — December 14, 1983.

Present: Hale, C.J., Dreben, & Smith, JJ.

*Burglary. Assault with Intent to Rob. Identification. Evidence,* Hearsay, Cumulative. *Statute,* Construction. *Words,* "Dwelling house."

A motel is a "dwelling house" within the meaning of G. L. c. 266, § 14. [234-236]

There was sufficient evidence at a criminal trial to warrant the jury in finding the defendant guilty on an indictment charging two counts of assault with intent to rob. [236-237]

The judge in a criminal case did not err in denying the defendant's motions to suppress certain pretrial photographic identifications of the defendant and subsequent in-court identifications. [237]

At the trial of a criminal case arising from a burglary in a motel room, the judge did not err in permitting a witness to testify that he had observed his father write on a piece of paper a license plate number which, it later appeared, was the same as that on the defendant's automobile. [237]

INDICTMENTS found and returned in the Superior Court Department on September 16, 1981.

A motion to suppress evidence was heard by *Prince,* J., and the cases were tried before him.

*Antone B. Cruz, Jr.,* for the defendant.

*Phillip L. Weiner,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was convicted on indictments charging (1) breaking and entering a dwelling house in the nighttime and assault on a person therein, (2) two counts of assault with intent to rob, and (3) assault and battery. He argues four alleged errors which fall into three distinct categories: (1) the denial of motions for required findings of not guilty on the indictments that charged burglary and assaults

with intent to rob, (2) the denial of a motion to suppress identification testimony, and (3) the admission in evidence of certain testimony. We find no error and affirm the convictions.

We summarize the evidence. On August 12, 1981, two young women registered at a motel in Dartmouth. They were assigned a room and, because of a long automobile drive that day, fell asleep. At about 10:50 P.M., one of the victims was awakened by a noise which she thought came from the bathroom. She got up, turned off the lights and television, and went back to bed. Shortly thereafter she was awakened by an intruder who, as he approached her bed, said, "Don't scream or I'm going to kill you and your girlfriend."[1] He placed a hand over her mouth and continued to say that he would kill her. She bit his hand and he punched her in the face for about thirty to forty seconds. The other victim fled out the door, as did the intruder. Subsequent investigation disclosed that entrance into the motel room had been gained through the bathroom window, after the screen had been removed. The victims' pocketbooks were found outside the bathroom window.

1. (a) *Required finding of not guilty on the burglary indictment.* The defendant contends that the judge erred in denying his motion for a required finding of not guilty on the indictment that charged burglary. He argues that the crime occurred in a motel, a place that is not a "dwelling house," one of the essential elements of the crime of burglary as stated in G. L. c. 266, § 14, as amended by St. 1966, c. 330.[2] The judge did not err in denying the defendant's motion.

The issue raised by the defendant appears to be a matter of first impression in the Commonwealth.[3] The statutes

---

[1] That remark was heard by the other victim.

[2] General Laws, c. 266, § 14, provides in pertinent part: "Whoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or . . ."

[3] In *Commonwealth* v. *Breese*, 10 Mass. App. Ct. 757 (1980), this court upheld a conviction of armed assault in a dwelling house. G. L. c. 265,

dealing with the crime of burglary (G. L. c. 266, §§ 14 & 15) do not define the words "dwelling house." *Commonwealth* v. *Kingsbury*, 378 Mass. 751, 756 (1979).[4] Where a statute does not define its words, we will give them "their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). In order to derive the words' usual and accepted meaning we use "sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Ibid.* In addition, statutes are to be construed in the light of preexisting common law, *Ferullo's Case*, 331 Mass. 635, 637 (1954); *Commonwealth* v. *Conway*, 2 Mass. App. Ct. 547, 552-553 (1974), which is of importance in this matter because the burglary statutes are of ancient vintage.

Burglary is a common law crime which historically was considered an offense against a person's right of habitation.[5] *State* v. *Brooks*, 4 Conn. 446, 449 (1923). See also 43 A.L.R.2d 827, 835 (1955). Therefore, in order to convict a person of burglary at common law, the invaded structure had to be a place of habitation. *Devoe* v. *Commonwealth*, 44 Mass. 316, 325 (1841). LaFave & Scott, Criminal Law § 96, at 711 (1972). One test that has been used, for the purposes of a burglary prosecution, is whether a structure is "a place to sleep in." Nolan, Criminal Law § 404 (1976). Thus, legal dictionaries and treatises have considered hotels,

---

§ 18A. The crime took place in a motel room. The issue whether a motel was a dwelling house under the statute was not raised.

[4] In contrast, G. L. c. 266, § 1 (as amended by St. 1974, c. 281), which is concerned with the crime of arson contains a definition of "dwelling house." The definition includes, "all buildings used as dwellings such as apartment houses, tenement houses, hotels, boarding houses, dormitories, hospitals, institutions, sanatoria, or other buildings where persons are domiciled."

[5] Statutorily, burglary is now classified as a crime against property because it includes offenses relating to the breaking and entering into structures other than dwellings, such as vessels, ships, vehicles (G. L. c. 266, § 16) and railroad cars (G. L. c. 266, § 19). See Nolan, Criminal Law § 401 (1976).

boarding houses, and other similar structures to be "dwellings" or "dwelling houses"[6] for the purposes of burglary prosecutions.[7] A motel is similar to a hotel and is a place of habitation. Because of the historical background of the burglary statutes, the traditional meaning given to "dwelling" and "dwelling house" by legal dictionaries and treatises, and the definition of "dwelling house" found in the arson statute (see note 4, *supra*), we hold that in the circumstances a motel is a "dwelling house" under G. L. c. 266, § 14.

(b) *Required findings of not guilty on the indictment that charged assaults with intent to rob.* The defendant next contends that the judge erred in denying his motion for required findings of not guilty on the indictment that, in two counts, charged assault with intent to rob. The basis of his argument is that, on his interpretation of the facts, the larceny was completed prior to the assaults and therefore the assaults were not committed with the specific intent to rob. The defendant's argument is without merit.[8]

The intention of the defendant in committing the assaults was a question of fact to be determined from all the circumstances. *Commonwealth* v. *Williams*, 312 Mass. 553, 557

---

[6] At common law, the dwelling house was called the mansion house. For the purposes of burglary, the mansion house not only included the dwelling house but also other buildings within the curtilage. See *Devoe* v. *Commonwealth, supra.*

[7] Black's Law Dictionary 454 (rev. 5th ed. 1979) states that "[i]n criminal law (e.g. burglary) [a dwelling] means a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." In accord is Ballantine's Law Dictionary 385 (3d ed. 1969).

See also 12A C.J.S. Burglary § 31, at 216-217 (1980). ("Hotels and boarding houses, and houses in which rooms are let to lodgers, are undoubtedly dwelling houses [citations omitted] so as to make it burglary. . . .")

[8] The defendant also claims that because the other victim was not touched there was no force and violence as required by G. L. c. 265, § 20. However, the jury could find that the threat made by the defendant, combined with the assault and battery on the first victim, was sufficient force to produce a "reasonable apprehension of bodily injury" on the part of the second victim. See *Commonwealth* v. *Jones*, 362 Mass. 83, 88 n.4 (1972).

(1942). Intent generally can be proved only by inferences from the facts, and those inferences need only be reasonable. *Commonwealth* v. *Moran*, 387 Mass. 644, 647 (1982). Viewing the evidence in the light most favorable to the Commonwealth, as we must (*Commonwealth* v. *Burbank*, 388 Mass. 789, 797 [1983]), we consider there was sufficient evidence for the jury to conclude that the defendant returned to the bedroom with a continuing intent to steal from the victims and that the assaults were committed in furtherance of that objective.

The defendant also contends that the judge erred in failing to give a requested instruction on the assault with intent to rob indictment. We have examined the judge's instructions and conclude that there was no error.

2. *Motion to suppress identification.* The judge denied the defendant's motion to suppress pretrial photographic identifications and subsequent in-court identifications. The judge filed findings in regard to his decision. We have examined the evidence and determine that the findings are fully supported by the record. We conclude, as did the judge, that the defendant did not meet his burden of establishing that the identifications were unnecessarily suggestive. *Commonwealth* v. *Avery*, 12 Mass. App. Ct. 97, 101-102 (1981). *Commonwealth* v. *Chase*, 14 Mass. App. Ct. 1032, 1034 (1982).

3. *Admission of certain evidence.* The defendant objected, on the ground of hearsay, to the testimony of a witness that he observed his father write on a piece of paper a license plate number which, it subsequently developed, was the same as on the defendant's motor vehicle. There was no error. The witness had identified the defendant and had testified as to the license plate number. If his testimony as to his observation of his father's actions was hearsay, a point we do not reach, it was harmless.

*Judgments affirmed.*